**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **KHALIL MAKINS-DENNIS,**<br>***Plaintiff,***<br>**v.**<br>**LIFESTAR RESPONSE OF MARYLAND, INC.,**<br>***Defendant.*** | **Civil No.: 1:26-cv-00253-JRR** |

**MEMORANDUM OPINION**

Pending now before the court is Defendant Lifestar Response of Maryland, Inc.'s Motion to Dismiss at ECF No. 8 (the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, Defendant's Motion will be granted, although the court will afford Plaintiff leave to file an amended complaint in accordance with this memorandum opinion.

## I. BACKGROUND[1]

Plaintiff brings this action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by Defendant, his former employer. (ECF No. 1.) Plaintiff began his employment as an Emergency Medical Technician ("EMT") with Defendant on July 15, 2024. *Id.* ¶ 9. He "consistently performed his job duties in a satisfactory manner." *Id.* ¶ 10. Prior to his employment with Defendant, Plaintiff was employed by Procare Ambulance of Maryland, Inc. ("Procare"). *Id.* ¶ 11. During his Procare employment, Plaintiff "served as a witness to conduct that resulted in his EMS partner filing a charge of discrimination" with the U.S. Equal Employment

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Complaint. (ECF No. 1.) *See Byers v. Painter*, 173 F.4th 155, 158 (4th Cir. 2026).

Opportunity Commission ("EEOC"), with Plaintiff's name and witness role documented in EEOC materials. *Id.* ¶¶ 12–13. Plaintiff and his "EMS partner" who filed the charge were terminated by Procare. *Id.* ¶ 14.

Following Procare's termination of Plaintiff's EMS partner,[2] and while the EEOC investigation was ongoing, Procare "contacted Defendant regarding Plaintiff's partner and the EEOC matter." (ECF No. 1 at ¶ 15.) Plaintiff does not allege that Procare informed Defendant of Plaintiff's involvement in the EEOC investigation; however, Plaintiff alleges, based on Procare's contact regarding the EEOC matter, Defendant was aware of Plaintiff's coworker's EEOC investigation of Procare and "questioned" Plaintiff's coworker about it. *Id.* ¶ 16. "Shortly thereafter, Plaintiff experienced a marked change in treatment at Defendant, including heightened scrutiny, unfavorable assignments, and selective discipline."[3] *Id.* ¶ 17. "Plaintiff reasonably believed this treatment was retaliatory and objected to it." *Id.* ¶ 18.

At some unidentified time, "Plaintiff's EMS partner formally notified Defendant's Human Resources department of the retaliatory conduct and identified Plaintiff as a witness."[4] (ECF No. 1 ¶ 19.) *Id.* ¶ 20. Defendant terminated Plaintiff's EMS partner on April 15, 2025; Plaintiff was present and requested Human Resources be contacted. *Id.* ¶¶ 22–23. Defendant "escalated the situation" and contacted law enforcement. *Id.* ¶ 24. While Plaintiff was speaking to law

[2] The Complaint reads: "After the termination of Plaintiff's EMS partner . . ."; and does not include reference to Plaintiff's termination in this sentence. (ECF No. 1 at ¶ 15.) Based on the surrounding context set forth in the Complaint, however, the court understands the subsequent allegations to refer to events following Procare's termination of Plaintiff's employment as well as that of his EMS partner.

[3] As Plaintiff's retaliation claim is based upon his resulting termination, *see* ECF No. 1 ¶ 33, the court does not interpret Plaintiff's Complaint to raise a claim of retaliation based on any purported change in treatment. To the extent Plaintiff did intend to state such a claim, notwithstanding his failure to do so, any claim based on this single allegation would be subject to dismissal for each argument Defendant advances—*i.e.*, Plaintiff did not seek to exhaust (or exhaust) a claim of retaliation based on a change in his treatment; further, the claim is entirely conclusory and unsupported by factual allegations, and thus insufficient to state a claim.

[4] Plaintiff alleges that "Defendant failed to take corrective action." (ECF No. 1 ¶ 21.) Plaintiff's allegations do not clearly identify the purported retaliatory conduct his coworker experienced that resulted in the report.

enforcement about what he observed, Defendant informed him that he was terminated for insubordination. *Id.*

Plaintiff subsequently filed a charge of discrimination with the EEOC, detailing his and his coworker's terminations on April 15, 2025, and alleging that his termination was retaliation "due to [his] involvement in the termination of a fellow employee."[5] (EEOC Charge, ECF No. 8-2; ECF No. 1 ¶ 8.)

On January 21, 2026, Plaintiff initiated the instant action. (ECF No. 1.) He asserts a single claim of retaliation in violation of Title VII. *Id.* ¶¶ 31–35. Specifically, Plaintiff alleges he engaged in protected activity by "[p]articipating as a documented witness in EEOC proceedings," and "[o]pposing conduct he reasonably believed to be retaliatory," that Defendant had actual knowledge of same, and that Defendant subjected him to an adverse employment action by terminating his employment. *Id.* ¶¶ 31–33. Plaintiff contends that a causal connection exists between his protected activity and termination based on "temporal proximity, disparate treatment, escalation to law enforcement and pretextual justification." *Id.* ¶ 34. Defendant seeks dismissal of this action for failure to state a claim. (ECF No. 8.)

[5] While the court generally does not consider evidence outside of a complaint when ruling on a 12(b)(6) motion, the court may consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b). Relevant here, in the employment discrimination context, courts regularly conclude that EEOC charges are properly considered as integral to a plaintiff's complaint—*see, e,g.*, *Glanville v. Mayor & City Council of Baltimore, Maryland: Baltimore Police Dep't*, No. CV EA-23-3395, 2024 WL 5264381, at *4 (D. Md. Dec. 31, 2024); *Virella v. M.B.G. Enterprises Inc.*, No. CV RDB-21-1844, 2022 WL 36452, at *2 (D. Md. Jan. 4, 2022); *McKenzie-El v. Ports of Am.*, No. CV ELH-19-1980, 2020 WL 1185193, at *7 (D. Md. Mar. 12, 2020)—or subject to judicial notice, *see Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 416 (D. Md. 2024); *Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 249 (D. Md. 2023). Accordingly, and as Plaintiff has not challenged authenticity, the court considers Plaintiff's EEOC charge in ruling on the instant Motion.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III. ANALYSIS

Defendant seeks dismissal of Plaintiff's sole retaliation claim on two bases: 1) Plaintiff failed to exhaust his administrative remedies; and 2) Plaintiff fails to allege he engaged in protected activity under Title VII. (ECF No. 8-1 at pp. 4–12.)

### A. Administrative Exhaustion

"[B]efore filing suit under Title VII . . . , a plaintiff must exhaust [his] administrative remedies by bringing a charge with the EEOC."[6] *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) (citing 42 U.S.C. § 2000e-5(b)). A plaintiff's administrative charge "defines the scope of [his] subsequent right to institute a civil suit." *Smith v. First Union Nat. Bank*, 202 F.3d 234, 247 (4th Cir. 2000). "Requiring exhaustion of administrative remedies serves twin objectives: protecting agency authority in the administrative process and 'promot[ing] efficiency' in the resolution of claims." *Stewart v. Iancu*, 912 F.3d 693, 699 (4th Cir. 2019) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

Generally, "a plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005). In determining whether a plaintiff has exhausted his claims, the court should look to claims raised in the administrative complaint, as well as claims "that would naturally have arisen from an investigation thereof." *Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 306 (4th Cir. 2019) (quoting *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)). "[W]hen the claims in [his] court complaint are broader than 'the allegation of a discrete act or acts in [the]

---

[6] "Although exhaustion is imperative, it is not jurisdictional." *Walton v. Harker*, 33 F.4th 165, 175 (4th Cir. 2022); *see Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 550 (2019) (holding that "Title VII's charge-filing requirement is not of jurisdictional cast").

administrative [complaint],' they are procedurally barred." *Id.* (quoting *Chacko*, 429 F. 3d at 508–10)). The court recognizes, however, that administrative charges "often are not completed by lawyers and as such 'must be construed with utmost liberality.'" *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). Still, the court is not "at liberty to read into administrative charges allegations they do not contain." *Id.* Ultimately, "[o]nly 'those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit.'" *Stewart*, 912 F.3d at 705 (quoting *Chacko*, 429 F.3d at 506).

Defendant argues that any retaliation claim based on Plaintiff's prior role as a witness in the EEOC investigation arising from his employment with Procare is barred because it was not administratively exhausted. The court agrees. While the court appreciates that both Plaintiff's charge and his instant Complaint raise the same general claim—retaliation in the form of termination, the precise issue is that the basis for that retaliation in this action includes Plaintiff's participation in an EEOC investigation as a witness. Such basis is entirely distinct and different (not "nearly identical," *see* ECF No. 16 at p. 4) from the basis he asserts in his EEOC charge. Indeed, Plaintiff's involvement as a witness in a separate EEOC proceeding occurred under different circumstances, during a different timeframe, and possibly involving different actors, than the purported protected activity raised in Plaintiff's EEOC charge. *See Chacko*, 429 F.3d at 506, *supra*. Plaintiff's EEOC charge focuses entirely on the actions on April 15, 2025, including both his and his employer's conduct that same day. There is no claim or indication that any purported retaliation was responsive or connected to earlier protected activity involving a different employer (Procare). To the contrary, Plaintiff plainly stated in his EEOC charge that he believed his

termination was retaliation "due to [his] involvement in the termination of a fellow employee" at Defendant's place of employment. (EEOC Charge, ECF No. 8-2.)

The court thus agrees with Defendant that Plaintiff's claim of protected activity related to a different incident, at a different time, with a different basis for the retaliation, is not reasonably related to his exhausted retaliation claim. The court will therefore grant the Motion to the extent it seeks dismissal of any claim arising from Plaintiff's protected activity in serving as a witness in a prior EEOC investigation.

**B. Retaliation—Protected Activity**

Title VII's anti-retaliation provision "shields from retaliation two categories of activity: *participation* and *opposition*."[7] *Netter v. Barnes*, 908 F.3d 932, 937 (4th Cir. 2018) (emphasis in original). At issue here, an opposition claim arises where an employer retaliates against an employee because he "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). The anti-retaliation provision "is meant to prevent 'an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of [Title VII's] basic guarantees." *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006)).

A plaintiff "may prove that an employer took action with . . . retaliatory intent through direct evidence or through the burden-shifting framework of *McDonnell Douglas*." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). Absent direct evidence, as is the case here, a plaintiff must establish a *prima facie* case pursuant to the *McDonnell Douglas* framework. The

[7] Plaintiff incorrectly characterizes his report to law enforcement at the time of his coworker's termination to be protected participation. Protected participation within Title VII's anti-retaliation provision refers to participating in a proceeding under Title VII. Plaintiff's allegations do not support that the law enforcement investigation was related to a Title VII investigation of any sort. The court therefore considers his alleged protected activity as the broader category—protected opposition. For the reasons discussed above, the court does not consider Plaintiff's allegations of protected participation activity based on previously serving as a witness in an EEOC investigation.

elements of a prima face case of retaliation under this burden-shifting framework, applicable here, include: "(1) [the plaintiff] engaged in protected activity, (2) the employer took adverse action against [him], and (3) a causal relationship existed between the protected activity and the adverse employment action." *Johnson v. Baltimore City, Maryland*, 163 F.4th 808, 819 (4th Cir. 2026) (citing *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)). "At bottom, in order to adequately plead a Title VII retaliation claim, the complaint must 'allege facts supporting a plausible inference that the employer took an adverse . . . action against the plaintiff 'because' of the plaintiff's protected activity.'" *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (citation modified) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022)).

"Courts take an 'expansive view of what constitutes oppositional conduct.'" *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 603 (D. Md. 2018) (quoting *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015)). It "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Such activity must, however, be "directed at 'an unlawful employment practice' under Title VII." *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 718 (4th Cir. 2024). Indeed, "Title VII is not a general bad acts statute, . . . and it does not prohibit private employers from retaliating against an employee based on her opposition to discriminatory practices that are outside the scope of Title VII." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011). *See also Bowman v. Baltimore City Bd. of Sch. Commissioners*, 173 F. Supp. 3d 242, 248 (D. Md. 2016) ("General complaints of unfair treatment are not protected activity."); *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2012) ("Although Title VII does not protect general complaints of unfair treatment, 'an employee's complaint constitutes protected activity

when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct.'") (citations omitted).

In inquiring whether an employee has engaged in protected opposition, the "touchstone" is whether his "course of conduct *as a whole* (1) 'communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination,' . . . ; and (2) concerns subject matter that is 'actually unlawful under Title VII' or that the employee 'reasonably believes to be unlawful.'" *DeMasters*, 796 F.3d at 418 (emphasis in original) (first quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009); and then quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015)). Plaintiff must plead facts that show he "reasonably believed that the employment action [he] opposed constituted a Title VII violation," and that his "conduct in opposition was reasonable." *Netter v. Barnes*, 908 F.3d 932, 937–38 (4th Cir. 2018) (first quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015); and then quoting *Laughlin*, 149 F.3d at 259–60).

The court agrees with Defendant that Plaintiff's allegations on this point are insufficient to raise a plausible claim of protected opposition activity. His allegations are merely that he was present at his coworker's termination, he requested Human Resources be contacted and documentation be provided,[8] and he provided a statement to law enforcement. Even crediting Plaintiff's allegation that he "reasonably believed" the termination of his coworker to be retaliatory,[9] Plaintiff fails to offer any factual basis upon which to conclude that his actions vis-à-

[8] Defendant contends this assertion is similarly not exhausted. (ECF No. 8-1 at p. 10 n.5.) The court disagrees. Plaintiff's EEOC charge detailed this incident and Plaintiff's and his coworker's actions therein. This allegation, then, is reasonably related to the charge and would flow from a natural investigation of same. *See Stewart v. Iancu*, 912 F.3d 693, 705 (4th Cir. 2019). Indeed, it appears Defendant may conflate the administrative exhaustion inquiry with the weight that should be afforded Plaintiff's allegation.

[9] While the court is mindful of its obligation to construe liberally the pleadings of self-represented litigants, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), Plaintiff is now represented by counsel who did not seek leave to file an amended complaint after entry of an appearance. The court thus weighs Plaintiff's previous unrepresented status accordingly.

vis requesting Human Resources and speaking with law enforcement were done to oppose activity made unlawful by Title VII and that Defendant was aware (or should have been aware) of same. *See DeMasters*, 796 F.3d at 418, *supra*. Stated more plainly, Plaintiff's allegations do not support a plausible inference that he communicated to his employer a belief that the employer was engaged in prohibited action under Title VII. *See Dancico v. MLT Sys. LLC*, No. 1:24-CV-1317 (RDA/WEF), 2026 WL 384341, at *12 (E.D. Va. Feb. 11, 2026) (noting that an assertion that an act "was improper does not convey that Plaintiff viewed it as a Title VII violation or as discrimination"); *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018) (noting plaintiff's "pre-termination activities did not communicate opposition to an alleged discriminatory practice and are thus not protected activities within the meaning of Title VII").

In the absence of factual allegations to support an assertion of protected activity, Plaintiff fails to state a plausible retaliation claim. The court will grant the Motion on that basis.

## IV. REQUEST FOR LEAVE TO AMEND

In his opposition, Plaintiff requests leave to amend should the court "deem the Complaint to be insufficient in any way." (ECF No. 16 at pp. 7–8.) Defendant opposes the request, arguing that amendment would be futile. While the court agrees amendment would be futile as to its finding on administrative exhaustion, it is not so persuaded as to Plaintiff's protected opposition. The court can discern factual allegations that, if accurate and in fact made, may cure the deficiency as to Plaintiff's failure to allege protected opposition activity. Accordingly, in view of the fact that this litigation remains in its early stages, Plaintiff's *pro se* status at the time of the original Complaint, Rule 15(a)'s instruction that courts "should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), and the Fourth Circuit's policy to liberally allow amendment, *see*

*Galustian v. Peter*, 591 F.3d 724, 729 (4th Cir. 2010), the court will grant Plaintiff leave to file an Amended Complaint to cure the deficiency noted herein.

Because Plaintiff's request is made solely to correct any deficiencies, any amendment must comport with this opinion, which is to say, the amendment's purpose is solely to add additional factual allegations (should they exist) to support his claim that he was retaliated against by Defendant when he engaged in protected opposition at the time of his coworker's termination. Plaintiff may not utilize amendment to reassert any claim the court found was not properly exhausted (as amendment on that point would be futile)[10] or otherwise advance new legal theories (as Plaintiff's request to amend does not embrace that). Should Plaintiff file an Amended Complaint, Defendant may then respond in accordance with the Federal and Local Rules; beyond those set forth herein, the court makes no findings as to the merits of, or grounds for, any potential amended pleading. Should Plaintiff choose not to file a timely Amended Complaint, this case will be dismissed without further notice.

## V. CONCLUSION

For the reasons set forth herein, by separate order, the Motion will be granted.

October 30, 2026

/S/

______________________________
Julie R. Rubin
United States District Judge

[10] Of course, any amendment has no bearing on Plaintiff's entitlement to challenge the court's instant ruling on appeal.